RECORD NO. 15-1996

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**LIVIA PROPERTIES, II, LLC,**

*Plaintiff-Appellant,*

**v.**

**JONES LANG LASALLE AMERICAS, INC.
and
COMCAST OF CALIFORNIA/MARYLAND/
PENNSYLVANIA/VIRGINIA/WEST VIRGINIA, LLC,**

*Defendants-Appellees.*

_____

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DIVISION OF VIRGINIA AT HARRISONBURG**

Mark D. Obenshain
Justin M. Wolcott
**OBENSHAIN LAW GROUP**
Suite 130
420 Neff Avenue
Harrisonburg, Virginia 22801
(540) 208-0728 (Telephone)
(540) 266-3568 (Facsimile)
mdo@obenshainlaw.com
jmw@obenshainlaw.com

Counsel for Plaintiff-Appellant -
Livia Properties, II, LLC

# CORPORATE DISCLOSURES

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Livia Properties, LLC makes the following disclosures

1.  Is party a publicly held corporation or other publicly held entity? No.

2.  Does party have any parent corporations? No.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly-held corporation or other publicly held entity? No

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? No

5.  Is party a trade association? No

6.  Does this case arise out of a bankruptcy proceeding? No


_____/s/ Mark D. Obenshain_____
MARK D. OBENSHAIN (VSB #27476)
JUSTIN M. WOLCOTT (VSB #83367)
OBENSHAIN LAW GROUP
420 Neff Avenue Suite 130
Harrisonburg, Virginia 22801
(540) 208-0727
(540) 266-3568 (fax)
mdo@obenshainlaw.com
jmw@obenshainlaw.com
*Counsel for Plaintiff-Appellant*

## <u>TABLE OF CONTENTS</u>

**CORPORATE DISCLOSURES**……………………………………... ii

**TABLE OF CONTENTS**……………………………………….. iii

**TABLE OF AUTHORITIES**…………………………………… v

**JURISDICTIONAL STATEMENT**………………………………… 1

**STATEMENT OF THE ISSUES**…………………………………... 1

**STATEMENT OF THE CASE**…………….................................... 2

**STATEMENT OF THE FACTS**…………………………………... 3

**SUMMARY OF ARGUMENT**………………………………….. 6

**STANDARD OF REVIEW**………………………………………….. 11

**ARGUMENT**

   **I.**   **Tortious Interference**……………………………………… 11

      A. <u>The district court erred in finding that the Defendants used
no improper methods sufficient to support a claim for
tortious interference</u>………………………………………… 11

         1.  The district court misapplied *Jones Lang LaSalle
Ams., Inc. v. Hoffman Family*…………………………….. 12

         2.  The district court incorrectly focuses of Livia's
reasons for refusing to make an illegal contract……………... 17

         3.  Livia sufficiently alleged numerous other improper
methods sufficient to support the claim for tortuous
interference………………………………………………… 19

B. The district court erred finding that an agent cannot interfere with his principal's contract and that Livia failed to allege that JLLA acted outside the scope of its agency relationship with Comcast……………………………………………….... 20

II. **Business Conspiracy**………………………………………....... 24

A. The district court erred in finding that the business conspiracy claim fails for the lack of an underlying tort…………………………….... 24

   1. The tortious interference claim should not be dismissed and is sufficient to support a claim under the Virginia business conspiracy statute……………………………….... 24

   2. Livia alleged additional wrongful acts sufficient to support a claim under the Virginia business conspiracy statute……………………………………………………….... 25

B. The district court erred in finding that an agent cannot conspire with its principal and that JLLA did not act outside the scope of its agency relationship with Comcast………………………………. 26

C. The district court erred in finding no concerted action or unity of purpose between Comcast and JLLA……………………………. 29

D. The district court erred in finding that Livia's claim fails for lack of sufficient legal malice……………………………………… 31

**CONCLUSION**…………………………………………………………. 32

**REQUEST FOR ORAL ARGUMENT**………………………………. 32

**CERTIFICATE OF COMPLIANCE WITH RULES**……………………. 34

**CERTIFICATE OF SERVICE**………………………………………... 35

iv

# TABLE OF AUTHORITIES

Federal Cases                                                                                          page(s)

*Andrew v. Clark*,
  561 F.3d 261 (4th Cir. 2009)……………………………………………… 10

*Garrett v. Langley Fed. Credit Union*,
  121 F. Supp. 2d 887 (E.D. Va. 2000)………………………………….. 29

*Grayson Fin. Am., Inc. v. Arch Specialty Ins. Co.*,
  2:05cv461,
  2006 U.S. Dist. LEXIS 7302 (E.D. Va. Feb. 6, 2006)………………... 22, 28

*Jones Lang LaSalle Ams., Inc. v. Hoffman Family*,
  606 Fed. Appx. 706 (4th Cir. 2015)…………………………………. *passim*

*Jones Lang LaSalle Ams., Inc. v. Hoffman Family*,
  No. 1:13-cv-01011,
  2014 U.S. Dist. LEXIS 47138 (E.D. Va. Apr. 4, 2014)……………………. 3

*Mylan Labs., Inc. v. Matkari*,
  7 F.3d 1130 (4th Cir. 1993)………………………………………… 10, 24

*Rogers v. Jefferson-Pilot Life Ins. Co.*,
  883 F.2d 324 (4th Cir. 1989)……………………………………… 24

*WV Ass'n of Club Owners & Fraternal Servs. v. Musgrave*,
  553 F.3d 292 (4th Cir. 2009)……………………………………… 10


State Cases

*Charles E. Brauer v. Nations Bank of Virginia, N.A.*,
  251 Va. 28 (Va. 1996)………………………………………….. 26

*Chaves v. Johnson*,
  230 Va. 112 (Va. 1985)……………………………………….. 11, 17

*Cleco Construction Co. v. Richmond Metropolitan Authority*,
    No. LF-421-4,
    2000 WL 20606, *1 (Va. Cir. Ct. Jan. 10, 2000)………………………… 21

*Commercial Bus. Sys., Inc. v. Bell South Servs.*,
    249 Va. 39 (Va. 1995)………………………………………………….. 31

*Dunlap v. Cottman Transmission Systems, LLC*,
    287 Va. 207 (Va. 2014)……………………………………………. *passim*

*Dunn, McCormack & MacPherson v. Connolly*,
    281 Va. 553 (Va. 2011)…………………………………………….. 25, 26

*Fox v. Deese*,
    234 Va. 412 (1987)………………………………………………… 21, 22

*Grenco Real Estate Inv. Trust v. Nathaniel Greene Dev. Corp.*,
    218 Va. 228 (Va. 1977)…………………………………………….. 13, 15

*Massie v. Dudley*,
    173 Va. 42 (Va. 1939)……………………………………………… 15, 16

*Perk v. Rector Resources Group*,
    253 Va. 310 (Va. 1997)………………………………………………… 27

*Richmond Metro. Auth. v. McDevitt St. Bovis*,
    256 Va. 553 (Va. 1998)………………………………………………… 12

*Simmons v. Miller*,
    261 Va. 561 (Va. 2001)………………………………………………… 31

Other cases

*Reg. v Druitt*, 10 Cox C.C. 592 (1867)………………………………………31

Federal Code and Rules

Title 28 United States Code § 1291……………………………………………... 1

Title 28 United States Code § 1332……………………………………………... 1

Title 28 United States Code § 1367(a)………………………………………… 1

Federal Rule of Civil Procedure 12(b)(6)………………………………… 9, 10, 23

Virginia Code

Title 18.2 § 499……………………………………………………………... 25

Title 18.2 § 500……………………………………………………………... 25

## JURISDICTIONAL STATEMENT

Livia Properties, II, LLC (hereinafter "Livia"), appeals the District Court's dismissal of its Complaint against Jones Lang LaSalle Americas, Inc., (hereinafter "JLLA") and Comcast of California/Maryland/Pennsylvania/Virginia/West Virginia, LLC (hereinafter "Comcast")(hereinafter collectively referred to as "Defendants") alleging (1) tortious interference with contract and (2) business conspiracy.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1367(a) (supplemental). On August 7, 2015, the district court entered an order dismissing Livia's causes of action against both Defendants. (Joint Appendix "J.A." 81). Livia Properties, II, LLC timely appealed. (J.A. 82–83).This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

### Tortious Interference Claims

1. Whether the district court erred in finding that the Defendants used no improper methods sufficient to support a claim for tortious interference?

2. Whether the district court erred in finding that an agent cannot interfere with his principal's contract and that JLLA did not act outside the scope of its agency relationship with Comcast?

1

**Business Conspiracy Claims**

3. Whether the district court erred in finding that because there was no underlying tort Livia's business conspiracy claim must fail?

4. Whether the district court erred in finding that an agent cannot conspire with its principal and JLLA did not act outside the scope of its agency relationship with Comcast.

5. Whether the district court erred in finding that the Complaint failed to assert concerted action between Comcast and JLLA?

6. Whether the district court erred in finding that the Complaint lacked allegations of legal malice?

## STATEMENT OF THE CASE

Livia filed this action on October 23, 2014 in the District Court for the Western District of Virginia against Defendants, Comcast and JLLA seeking compensatory damages and punitive damages based on JLLA's tortious interference with Livia's business expectancy and prospective business advantage and based on both Defendants' statutory business conspiracy.

On December 10, 2014 the Defendants filed respective motions to dismiss Livia's complaint along with supporting memoranda. On December 29, 2014 Livia filed memoranda in opposition to Defendants' motions to dismiss. Defendants filed respective replies on January 8, 2015.  The district court heard oral argument on Defendants' motions on March 12, 2015.  On April 29, 2015 by invitation of the court, Livia and Defendants contemporaneously filed supplemental briefs discussing the impact of this Court's ruling in *Jones Lang LaSalle Americas, Inc. v. Hoffman*

2

*Family*, *LLC*, 606 Fed. Appx. 706 (4th Cir. 2015) upon the issues briefed and discussed in this case at oral argument.  On August 7, 2015, the District Court granted Defendants' motions to dismiss both counts and entered an order dismissing the action.  (J.A. 81).  On August 31, 2015 Livia timely filed its Notice of Appeal. (J.A. 82–83).

<h1 align="center">STATEMENT OF THE FACTS</h1>

This action arises out of JLLA's illegal use of an unlicensed real estate agent to demand that Livia enter a brokerage agreement with it and to negotiate a lease renewal with Livia on Comcast's behalf. (Complaint, ¶¶ 26–27, J.A. 12–13).  During the course of the lease renewal, and in spite of ongoing litigation and an adverse ruling in *Jones Lang LaSalle Ams., Inc. v. Hoffman Family, LLC*, No. 1:13-cv-01011, 2014 U.S. Dist. LEXIS 47138 (E.D. Va. Apr. 4, 2014), JLLA threatened Livia and attempted to extort from Livia an unlawful commission for services JLLA provided to Comcast. (Complaint, ¶¶ 16–18, J.A. 10–11). Even though Livia informed Comcast of this unlawful activity, Comcast acceded to this conduct and affirmatively assisted JLLA in its effort to extort the unlawful commission and in its retaliation against Livia for its refusal to comply with its demands.  (Complaint, ¶¶ 30–32, J.A.13).

The business relationship between Comcast and Livia flows from a September 21, 2004 lease agreement between Livia and Comcast's predecessor in interest,

Adelphia Cable Communications. (Complaint, ¶ 9, J.A. 9). Adelphia leased 83,000 square feet[1] of warehouse space in Staunton, Virginia with a ten year term and an option to renew. *Id*. Comcast eventually acquired the assets of Adelphia and assumed its rights and obligations under the Lease Agreements. (Complaint, ¶ 11, J.A. 9).

In 2013, a year before the expiration of the lease term, Comcast undertook construction of new offices in the leased premises, expending significant funds and resources of its own on the improvements. (Complaint, ¶ 12, J.A. 9–10). Also, in 2013, Comcast had engaged JLLA and certain of its agent and employees to represent it to consult and provide services in leasing and negotiating leases for its operations in the mid-Atlantic region, including the Commonwealth of Virginia. (Complaint, ¶ 13, J.A. 10). In providing services to Comcast, JLLA assigned its agent or employee Paula Thompson ("Thompson") as its agent representing Comcast and to act as a real estate salesperson to handle the renewal of the Lease Agreements on behalf of Comcast with Livia. (Complaint, ¶ 14, J.A. 10).

Until January 9, 2014 Livia had every reasonable expectation that Comcast intended to renew its lease. (Complaint, ¶ 15, J.A. 10). Although it was Comcast, not Livia, that had retained JLLA and stood to benefit from its services, JLLA

---

[1] In August of 2005 an additional 18,500 square feet were added to the leased premises, bringing the total to 101,500 square feet. (Complaint, ¶ 10, J.A. 9).

demanded that Livia pay its commissions. (Complaint, ¶¶ 13, 16, J.A. 10). JLLA's employee, Thompson, sent an email message to counsel for Livia stating "I want to be very clear upfront that [Livia] will be responsible for payment of the brokerage commission to my firm, [JLLA]. Typically the fee is 3% of the rent over the life of the lease."(Complaint, ¶ 16, J.A. 10). Livia responded to the demands from JLLA and Thompson on the same day as follows: "[Livia] secured Comcast (and its predecessor) as a tenant by herself without any assistance from any brokerage house or agent. [JLLA] neither secured the tenant nor its expansion of the space used by the tenant, which space will be part of the renewal. Moreover, Comcast hired [JLLA] – not Mrs. Welsh[2]– and will be solely responsible for any brokerage fee. Accordingly Mrs. Welsh will not agree to pay any brokerage fee." (Complaint, ¶17, J.A. 10–11). On Friday, January 10, 2014, JLLA and Thompson escalated their demand with an overt emailed threat that "Mrs. Welsh will pay the commission or there will not be a deal." (Complaint, ¶ 18, J.A. 11).

Although Comcast's agent, Thompson, clearly engaged in activities that required a real estate license, she was not licensed in Virginia as required by Virginia law. (Complaint, ¶¶ 25–26, J.A. 12). In spite of Thompson's status, JLLA and Comcast threatened Livia and demanded that Livia pay for services JLLA provided to Comcast in making an illegal contract. (Complaint, ¶¶ 18, 27, J.A.11, 12–13).

---

[2] Mrs. Welsh is Livia's principal.

5

Moreover, Thompson further transmitted to Livia a demand that it sign a brokerage agreement with JLLA notwithstanding the fact that Thompson had no license and such a contract would have been illegal. (Complaint ¶¶ 25, 26, J.A. 12). Shortly after Livia refused to acquiesce to Thompson's threats, Comcast and JLLA carried through with the threatened retaliation by identifying and securing an alternative to Livia's site for Comcast to lease. (Complaint, ¶ 28, J.A. 13).

JLLA used improper means, including threats and an unlicensed real estate agent, to interfere with Livia's business expectancy in connection with its lease with Comcast. (Complaint, ¶¶ 30–34, J.A. 13). JLLA, by using an unlicensed real estate agent to perform its obligations under its contract with Comcast, acted outside of the scope of its agency relationship with Comcast. (Complaint ¶¶ 21, 25–26, J.A. 11, 12). After Comcast was informed of JLLA's unlawful activity, Comcast acceded in the activity and actually assisted JLLA in its effort to retaliate against Livia and to profit from its improper activity. (Complaint ¶¶ 30–34 J.A. 13). The contract interference and the conspiracy with Comcast caused Livia to suffer damages in the future economic benefit of a lease renewal with Comcast. (Complaint, ¶¶ 36, 42, 46, J.A. 14, 15).

## SUMMARY OF ARGUMENT

Livia's principal refused to be a victim of a fraudulent scheme by JLLA to extort from it an unlawful real estate commission, and for that refusal Comcast and

6

JLLA set out to punish her. The district court, however, found that Comcast and JLLA engaged in no improper methods in dealing with Livia. This finding is the sine qua non of the district court's remaining findings and because it is in error in this finding, so too is it in error in its remaining findings.

The district court also dismissed Livia's tortious interference claim on the basis that an agent acting within the scope of its agency cannot interfere with the contract of its principal and that Livia failed to allege that JLLA was acting outside the scope of its agency relationship with Comcast. However, the allegations that "Comcast engaged JLLA for the purpose of locating and procuring properties for Comcast to lease . . . ." and that "[n]otwithstanding the licensure requirements imposed by Virginia law, Thompson initiated and participated in lease negotiations with Plaintiff . . . ." clearly belie this finding. (Complaint ¶¶ 21, 25, 26, J.A.11–12). It is clear that Comcast retained JLLA for the purpose of providing real estate services, but it is also equally clear that Comcast did not retain JLLA to provide them in violation of Virginia law by utilizing unlicensed real estate personnel. Thus, engaging in illegal activity in utilizing an unlicensed real estate agent, as alleged, certainly takes JLLA's conduct outside the scope of its agency relationship with Comcast sufficient to support Livia's tortious interference claim.

As a consequence of its finding that Livia's underlying tortious interference claim must be dismissed, the district court held that so too then must the business

conspiracy claim be dismissed. The district court was in error in finding that the tortious interference claim must be dismissed, and thus for this reason, the district court was in error in finding that the business conspiracy claim must be dismissed. Moreover, Livia alleged numerous other wrongful acts including Thompson's failure to possess a real estate license, the effort to extort the unlawful commission, and the subsequent retaliation sufficient to satisfy the Virginia Business Conspiracy statute's wrongful act requirement.

The district court further held that Livia's business conspiracy claim must fail because there can be no conspiracy to do an act which the law allows. While it is true that the law allows parties to contract, it is equally clear that the law does not allow parties to form illegal contracts. In this case, had Livia acceded to JLLA's demands to pay the commission for Thompson's services provided to Comcast, or in the alternative, had Livia acceded to Thompson's demands to enter into a contract whereby JLLA would provide services to Livia, then an illegal contract would have been made, as Thompson needed a license to negotiate, enter any such agreement or offer any such services. The law does not allow the making of illegal contracts nor does it allow the punishment of a person who refuses to make an illegal contract and these acts are exactly what Comcast and JLLA conspired to do. Thus, the district court was in error in finding that there was no unlawful or illegal act independent of the tortious interference claim to support Livia's business conspiracy claim.

8

In dismissing Livia's business conspiracy claim the district court held further that the Complaint did not assert any concert of action between JLLA and Comcast. The concert of action, however, is found in the retaliation by Comcast and JLLA against Livia by not renewing the lease after Livia refused to pay the illegal commissions. (Complaint, ¶¶ 30–34, 44, J.A. 13, 15). The nature of a conspiracy is that it is conducted in secret and at this point in the litigation, prior to discovery, facts alleging a conspiracy are asserted with as much particularity as possible. Rather than treating Livia to the harsh result of dismissing its claim on a 12(b)(6) motion, the district court should have allowed the claims to proceed to the discovery stage of litigation. Thus, the district court was in error in holding that the Complaint alleged concert of action in only conclusory language and ultimately dismissing Livia's complaint.

The district court last concluded that Livia failed to assert adequate facts to support allegations of legal malice. The district court was in error in this finding in much the same way as it was in error in its finding no concert of action. In short, legal malice was pleaded in the complaint for example where Livia alleged that " . . . as a result of the Plaintiff's refusal to agree to payment of illegal compensation and commissions to JLLA, Comcast and JLLA set out to identify and secure an alternative to [Livia's] site for Comcast to lease." (Complaint ¶ 28, *see also* ¶¶ 31–43, J.A. 13).

9

Thus, for the foregoing reasons and for the reasons asserted below, the district court erred in dismissing Livia's Complaint and this Court should remand the case for further proceedings.

## STANDARD OF REVIEW

This Court reviews a "district court's dismissal under Rule 12(b)(6) de novo." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.*, *see also, WV Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009)(stating that this Court reviews a district court's legal conclusions de novo), *Andrew v. Clark*, 561 F.3d 261, 264 (4th Cir. 2009)("We review a dismissal for failure to state a claim de novo, drawing all reasonable inferences in favor of the plaintiff and accepting the allegations that are stated in the complaint as true.")

## ARGUMENT

### III.  Tortious Interference

A. <u>The district court erred in finding that the Defendants used no improper methods sufficient to support a claim for tortious interference.</u>

The elements of tortious interference with a prospective contract include (1) the existence of a business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent the defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) resultant damage to the plaintiff. *Chaves v. Johnson*, 230 Va. 112, 120 (1985).  "[I]f a contract is terminable at will or involves only a contract or business expectancy, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference . . ., but also that the defendant employed improper methods."  *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 216 (2014) (internal quotations and citations omitted).

> "'Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Duggin v. Adams*, 234 Va. 221, 227, 4 Va. Law Rep. 820(1987).'  Improper methods may include 'violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship.' *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559 (2011).  We have also stated that methods may be improper if 'they violate an established standard of a

11

trade or profession, or involve unethical conduct[, s]harp dealing, overreaching, or unfair competition."

*Id*. at 216 n.5.  The elements of fraud in Virginia include "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party." *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 557–58 (1998).

The district court miscasts the dispute as a typical business dispute and states that "it is clear that [JLLA's hardline stance that Livia would pay the commission or there will not be a deal] lies at the heart of [the] dispute."  (J.A. 67).  The district court goes on to state that "there is nothing inherently tortious about this type of negotiation. . . . At most, the allegations in the Complaint suggest that both JLLA and Livia took a hard-line stance with respect to their positions on who would pay Livia's commission.  Livia cannot play hardball and then complain when it loses." (J.A. 68–69).  The district court stated that "Thompson's licensing status and the *Hoffman* decision do not lead to a different conclusion."  (J.A. 70).

    1.   The district court misapplied *Jones Lang LaSalle Ams., Inc. v. Hoffman Family*.

In this case, as in *Jones Lang LaSalle Ams., Inc. v. Hoffman Family*, 606 Fed. Appx. 706 (4th Cir. 2015), JLLA utilized an unlicensed real estate agent to negotiate a lease agreement.  In this case, in contrast with *Hoffman*, the unlicensed real estate

agent was involved at the beginning of the transaction with Livia, and was thus, integral in JLLA's effort to make an illegal contract.

In *Hoffman*, this Court made clear that under Virginia law "'a contract <u>made</u> in violation of the real estate licensing statute is illegal' and unenforceable.'" *Id.* at 709 (citing *Grenco Real Estate Inv. Trust v. Nathaniel Greene Dev. Corp.*, 218 Va. 228, 237 (Va. 1977) (emphasis added by Fourth Circuit)). The contract at issue in *Hoffman* was legal at making and only after making did the unlicensed real estate agent become involved with the contract. *Id*. at 708. In contrast, in this case, it was the unlicensed real estate agent, Thompson, who attempted to induce Livia to make an illegal contract and it was that unlicensed agent who was directly involved with negotiating and making the contract. (Complaint ¶ 19, J.A. 11). Moreover, in this case, after Plaintiff refused to make an illegal contract, both Defendants combined to retaliate against Livia. (Complaint ¶¶ 19, 28, 29, 31–33, J.A. 11, 13).

The specific facts in *Hoffman* draw an even sharper distinction between it and the case now before this Court. In *Hoffman*, the Hoffman Family, LLC, and Hoffman Buildings, L.P. and Jones Lang LaSalle Americas, Inc. entered into an agreement in August of 2007 whereby Hoffman retained the JLLA firm to act as the exclusive listing agent for its landholdings. *Id*. at 707. The terms of the agreement provided that if JLLA's efforts resulted in a lease of any of Hoffman's properties,

13

then JLLA would be entitled to a commission equal to two percent of the lease base rent. *Id*.

After the signing of the listing agreement JLLA assembled a Government Investor Services Group to identify and pursue federal leasing opportunities for Hoffman. *Id*. As part of that effort JLLA subsequently hired Arthur M. Turowski. *Id*. Turowski, however, was not a licensed real estate salesperson when he joined the team and did not obtain a salesperson's license while employed by JLLA. *Id*.

On April 7, 2011 the General Services Administration, with the help of JLLA, selected Hoffman for the award of a lease for the headquarters of the National Science Foundation. *Id*. Hoffman was to receive a total base rent of more than $330 million over the 15 year lease term. *Id*. at 707–708. Shortly after the lease was signed, Hoffman and JLLA disagreed over the amount of the commission JLLA was to receive and JLLA filed an action for breach of contract to recover the commission. *Id*. at 708. Only later, during discovery, did Hoffman learn that Turowski was not a licensed real estate salesperson in Virginia. *Id*.

In contrast, in the case now before this Court, it was Thompson, the unlicensed real estate agent, who attempted to induce Livia to make an illegal and unenforceable contract. (Complaint, ¶ 19, J.A. 11) (stating that "[o]n or about February 13, 2014, Thompson and JLLA further demanded that Plaintiff enter a written contract entitled "Commission Agreement" pursuant to which JLLA purported to be providing its

14

brokerage services to Plaintiff and pursuant to which the Plaintiff would be obligated to pay JLLA a commission in the amount of five percent of the gross rent on the renewed Lease Agreements."). Thompson was Livia's point of contact at JLLA, and was from beginning to end, directly involved with negotiating the commission and listing agreement, and directly involved with the effort to induce Livia to enter into an illegal contract. *Id*. Therefore, unlike in *Hoffman*, the contract with Livia in this case would have been illegal and unenforceable at making and would have been in violation of the clear principle in Virginia law that "'a contract made in violation of the real estate licensing statute is illegal' and unenforceable.'" *Hoffman,* 606 Fed. Appx. at 709 (citing *Grenco*, 218 Va. at 237)(emphasis added by Fourth Circuit).

The case now before this Court is further analogous to the cases it cited in *Hoffman* to support the proposition that a contract made in violation of the real estate licensing statute is illegal and unenforceable. For example, in *Hoffman*, this Court cited *Massie v. Dudley*, 173 Va. 42 (1939). In that case, a landowner approached an unlicensed real estate agent to find a purchaser for his farm. *Id*. at 45–47. The unlicensed agent found a purchaser for the farm, the landowner subsequently died, and the unlicensed agent attempted to collect a five percent commission from the landowner's estate. *Id*. at 45–49. The Supreme Court of Virginia held that the unlicensed real estate agent was not entitled to a commission because the substance of the contract was illegal. *Id*. at 51, 56. In reaching this conclusion, the court stated

15

that "[t]he agreement . . . is illegal, not merely invalid. It is void as being contrary to a positive statute and public policy. Not merely its mode of its performance, but its substance is unlawful." *Id*. at 51.

The case now before this Court is squarely in line with *Massie* and the principle that a contract made in violation of the Virginia real estate licensing statute is illegal and unenforceable. The only difference is that in this case, JLLA approached Livia with a demand to make an illegal contract, Livia discovered the illegality before contract formation, and both Defendants then retaliated against Livia for refusing to make an illegal contract. (Complaint, ¶¶ 19, 28, 29, 30–33, J.A.11, 13). Undoubtedly, had Livia entered into a contract with Comcast, then JLLA would have demanded a five percent commission for Thompson's services. Yet, it is entirely clear that under the Fourth Circuit *Hoffman* opinion and *Massie*, JLLA could not have recovered a commission because the substance of the contract would have been illegal at the time of the contract formation with Livia.

Thus, the district court was incorrect in concluding that this Court's opinion in *Hoffman* does not support Livia's contention that utilizing an unlicensed real estate agent to force Livia to make an illegal contract was an improper method to support Livia's tortious interference claim.

16

2.  The district court incorrectly focuses of Livia's reasons for refusing to make an illegal contract.

The district court is dismissive of Thompson's licensure status and attaches misplaced emphasis to Livia's reasons for declining to enter an illegal contract with JLLA.  In essence, the district court concluded that if the perpetrator of an attempted but thwarted fraud retaliates and injures his intended victim, in order for the retaliation and injury to be actionable the victim must have sniffed out the fraud. The district court concluded in this case that because Livia was unaware of JLLA's illegal actions when Livia first refused JLLA's demand that Livia pay a commission, Livia could not assert a viable claim where JLLA thereafter retaliated by diverting Comcast to an alternate property.

The district court states that "the chronology . . . makes clear that the fact that Thompson was unlicensed was not the reason for Livia's refusal to pay JLLA's commission."  (J.A. 70).  However, the reason for Livia's refusal to agree to the demands made by JLLA simply is not an element of a tortious interference claim, nor should it be.  The district court recites the elements of a tortious interference claim as follows (1) the existence of a business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent the defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) resultant damage to the plaintiff, *Chaves*, 230 Va. at 120, and where the contract is terminable at will the

17

Plaintiff must allege that the defendant used improper methods. *Dunlap*, 287 Va. at 216 (internal quotations and citations omitted). Nowhere do any of these cases state that a court should call in to question the victim's reason for refusing to become a victim in judging whether a wrongdoer should be held liable for tortious conduct.

In focusing on Livia's reasons for refusing to make an illegal contract, the district court also states that "it is clear that [JLLA's hardline stance that Livia would pay the commission or there will not be a deal] lies at the heart of [the] dispute." (J.A. 67–68). "Livia cannot play hardball and then complain when it loses." (J.A. 69). However, this is not at all what lies at the heart of the dispute. What lies at the heart of the dispute is JLLA's pattern and practice of utilizing unlicensed real estate agents to force landlords to make illegal contracts. There is a difference between playing legal hardball and illegal hardball. It is true that legal hardball does not constitute an improper method. However, illegal hardball, such as the use of an unlicensed real estate agent to force Livia to make an illegal contract— to pay hundreds of thousands of dollars in commissions to which JLLA is not legally entitled — is an improper method. Livia has every right to complain when other players gain an unfair advantage by playing by their own set of rules, under which they engage in illegal conduct and punish its competitors for refusing to play ball.

Moreover, the misplaced focus on Livia's reasons for refusing to play ball under a set of rules, where she must agree to make an illegal contract as a condition

18

for renewal, lead to the district court's conclusion in footnote 4 that "Livia would possibly have a contract claim against JLLA if it had signed the proposed agreement." (J.A. 70). This footnote demonstrates the illogical result of placing the emphasis on the victim's reasons for refusing to accede to illegal and fraudulent conduct. Under this line of reasoning, the only way for a victim to maintain a claim against a wrongdoer who seeks to force her to enter into an illegal contract is to make the illegal contract and then sue for contract damages. Thus, a wrongdoer would be free to engage in fraud, misrepresentation, and deceit, so long as his victim, at some point refuses to make the illegal contract. This interpretation of the tortious interference requirements under Virginia law, and specifically the analysis of the improper methods requirement, incentivizes wrongful conduct and insulates a wrongdoer from tort liability in every case where the victim refuses to make an illegal contract – even in cases like this one where the defendant retaliates and injures the plaintiff for refusing to enter the illegal contract. For these reasons, the district court erred in ruling that to assert a claim for tortious interference through retaliation, the victim's reasons for refusing to accede to the illegal conduct should control a court's determination.

> 3. Livia sufficiently alleged numerous other improper methods sufficient to support the claim for tortious interference.

As discussed in *Dunlap*, violations of statutes, violations of regulations or common law rules, threats or intimidation, fraud, misrepresentation and deceit all

19

are examples of improper methods sufficient to support a claim for tortious interference. *Dunlap*, 287 Va. at 16, n. 5. In addition to JLLA's pattern and practice of using unlicensed real estate agents and attempts to force Livia to make an illegal contract, JLLA and Comcast engaged in a number of other improper methods sufficient to support Livia's tortious interference claim. For example, Livia alleges that Defendants used threats and extortion to extract the illegal payment from her, sought to have her pay for services of an unlicensed broker, and JLLA's employee, Thompson, held herself out as a licensed broker in offering her services to Livia. (*See e.g.*, Complaint, ¶¶ 18, 25–26, J.A. 11, 12). All of these allegations demonstrate threats, fraud, misrepresentation, and deceit, independent of Thompson's licensure status, sufficient to demonstrate improper methods to support Livia's tortious interference claim.

B. The district court erred finding that an agent cannot interfere with his principal's contract and that Livia failed to allege that JLLA acted outside the scope of its agency relationship with Comcast.

The district court held that Livia's tortious interference claim should be dismissed on the basis that an agent acting within the scope of its agency cannot interfere with the contract of its principal and that the Complaint failed to allege facts that could establish that JLLA acted outside the scope of its agency relationship with Comcast.

20

In granting the motions to dismiss, the district court stated that "JLLA's actions were taken in furtherance of its work on Comcast's behalf and, therefore, the claim for tortious interference fails." (J.A. 64). In reference to the illegal nature of JLLA's conduct, the district court cites a Virginia state Circuit Court opinion to support the proposition that no act, however illegal or wrongful, can take an agent outside of the principal agent relationship. (J.A. 64, citing *Cleco Construction Co. v. Richmond Metropolitan Authority*, No. LF-421-4, 2000 WL 20606, *1 (Va. Cir. Ct. Jan. 10, 2000)). In citing *Cleco*, the district court places emphasis on the language from the *Cleco* opinion stating that "<u>whatever [the agent] did to further that work, right or wrong, was within the scope of its authority</u>." *Id*. The district court further concluded that because JLLA was retained by Comcast to negotiate leases on its behalf, it is "illogical to hold JLLA liable for tortious interference with a prospective contract when it had been retained for the express purpose of securing such a contract." (J.A. 67).

Virginia law holds that a conspiracy must consist of "a combination of two or more persons." *Fox v. Deese*, 234 Va. 412, 428–429 (1987). It is axiomatic that employees of a single business acting within the scope of their employment are both agents of the employer and that only one entity exists and it cannot conspire with itself. *Id*. The question, however, of whether the employees were acting within the scope of their employment, is a question of fact. *Id*. It is well established that where

"an agent acts outside of the agency relationship, the agent is considered a separate actor for purposes of the conspiracy." *Grayson Fin. Am., Inc. v. Arch Specialty Ins. Co.*, 2:05cv461, 2006 U.S. Dist. LEXIS 7302 (E.D. Va. Feb. 6, 2006) (citing *Fox*, 234 Va. at 428–29).

In this case, it is clear as Plaintiff alleged, that JLLA was outside of the scope of its agency relationship with Comcast and thus a separate actor in using unlicensed real estate agents and attempting to extort from Livia unlawful commissions. (Complaint, ¶¶ 16, 25–26, J.A. 10, 12).  Plaintiff specifically alleges that "'Comcast engaged JLLA for the purpose of locating and procuring properties for Comcast to lease . . . .' and that '[n]otwithstanding the licensure requirements imposed by Virginia law, Thompson initiated and participated in lease negotiations with Plaintiff . . . ." (Complaint, ¶¶ 21, 26, J.A.11, 12).  Moreover, the Complaint asserts that even after Comcast became aware of the unlawful activities that were plainly outside the scope of its agency relationship with JLLA, Comcast then actually assisted JLLA in pursuing its unlawful purpose.  (Complaint, ¶¶ 30, 32, J.A. 13).

It is clear that Comcast retained JLLA for the purpose of providing real estate services, but it is also equally clear that Comcast did not retain JLLA to provide the services in violation of the law with unlicensed real estate agents.  Thus, engaging in illegal activity in utilizing an unlicensed real estate broker, as alleged, certainly

brings JLLA's conduct outside the scope of its agency relationship with Comcast to support the tortious interference and conspiracy claims.

The district court, in footnote 2, acknowledges that in Livia's brief and at oral argument, Livia cited *Grayson Fin. Am., Inc.*, to support the proposition that the intercorporate immunity doctrine does not apply where an agent acts outside the scope of his agency relationship with his principal. (J.A. 63). Nevertheless, the district court concludes that, "*Grayson Financial* does not help plaintiff herein because, as noted above, there is no conclusory allegation that JLLA was acting outside the scope of its agency." (J.A. 63)  It seems that the district court takes issue with Livia's assertion of specific and detailed facts charging that JLLA engaged in the illegal practice of real estate, although retained for such purpose, does not sufficiently allege that this activity was outside of the scope of JLLA's agency relationship with Comcast.  It is clear, however, that Comcast did not create an agency relationship with JLLA for the purpose of obtaining real estate services in exchange for unlicensed agents not even permitted to legally conduct real estate business in the state of Virginia.  To so find, is to construe Livia's complaint in the narrowest terms and certainly not in line with the standard of view for a 12(b)(6) motion as articulated by the district court that "'[a] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to *a certainty* that the plaintiff would be entitled to no relief under any state of facts which could be proved

23

in support of his claim." (J.A. 6 (citing *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quotations omitted) (emphasis added)).  Or as the district court states "[i]n considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a *light most favorable to the plaintiff*."  (J.A. 54 (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d at 1134 (emphasis added)).  Utilizing the standards as articulated by the district court, it is far from certain that in the light most favorable to Livia it would be entitled to no relief under any of the facts alleged. Accordingly, the district court was in error in concluding that Livia failed to plead facts showing that JLLA acted outside the scope of its agency relationship with Comcast.

**IV.  Business Conspiracy**

    A.  <u>The district court erred in finding that the business conspiracy claim fails for the lack of an underlying tort.</u>

        1.  The tortious interference claim should not be dismissed and is sufficient to support a claim under the Virginia business conspiracy statute.

The district court wrongfully concluded that because Livia failed to plead an underlying tort, the business conspiracy claim must also fail.  Virginia law holds that the tortious interference with contract and tortious interference with business expectancy each "constitute the requisite 'unlawful act' to proceed on a business

24

conspiracy under Code §§ 18.2-499 and 500." *Dunlap*, 287 Va. at 218–219. Therefore, because the district court erred, as discussed above, in holding that Livia has failed to plead a claim for tortious interference, the tortious interference claim should constitute the required wrongful act to sustain an action for business conspiracy and Livia's pleadings are sufficient.

### 2. Livia alleged additional wrongful acts sufficient to support a claim under the Virginia business conspiracy statute.

Thompson's failure to possess a real estate license, the effort to extort an unlawful commission, and the subsequent retaliation also satisfy the Virginia business conspiracy statute's wrongful act requirement. Specifically, Comcast's agent, JLLA's employee, Thompson, was not even licensed to negotiate with Livia. This was clearly in violation of Virginia statutory law, and common law principles prohibiting fraud, misrepresentation, and deceit. *Dunn, McCormack & McPherson*, 281 Va. 553, 559 (Va. 2011). In spite of ongoing litigation that certainly should have put JLLA on notice that it was utilizing unlicensed real estate brokers in the state of Virginia, JLLA persisted in this practice to utilize those unlicensed real estate personnel to unlawfully negotiating multi-million dollar transactions in the Commonwealth. *See Jones Lang LaSalle Americas, Inc.*, 606 Fed. Appx. at 707.

Moreover, Comcast and JLLA used Thompson for the unlawful purpose of attempting to extort money from Livia by forcing it to pay for services provided to Comcast by JLLA and thereafter by retaliating against Livia for its refusal to pay.

25

(Complaint, ¶¶ 18, 32, J.A.11, 13). These acts also clearly violate Virginia standards of trade and profession and common law prohibitions against threats, fraud, and duress. *Dunn, McCormack & McPherson*, 281 Va. at 559.

B. <u>The district court erred in finding that an agent cannot conspire with its principal and that JLLA did not act outside the scope of its agency relationship with Comcast.</u>

The district court further states that the business conspiracy claim must fail for the same reasons that the tortious interference claim must fail; an agent cannot conspire with its principal. To support this proposition the district court cites, at J.A. 74, *Charles E. Brauer v. NationsBank of Virginia, N.A.,* 251 Va. 28 (1996). However, this case is distinguishable on its facts. In *Brauer* the lawful subject matter of the contract was for debt collection services. The plaintiff was a business who claimed business conspiracy against a bank and a debt collection company. *Id*. at 32. The subject matter of the agency relationship between the bank and the debt collection company was debt collection services, and as to a business conspiracy claim, the plaintiff alleged no other unlawful conduct between the bank and company. *Id*. There was no unlawful activity that brought the debt collection company outside the scope of its agency relationship with the bank. By contrast, in this case, Livia alleges that JLLA unlawfully used unlicensed real estate personnel and demanded an unlawful commission from Livia. (Complaint, ¶¶ 16–18, 25–26 J.A. 10–12). In this case, JLLA's unlawful means to perform an otherwise lawful

26

contract took it outside the scope of its agency relationship with Comcast and JLLA became a separate actor for purposes of the business conspiracy claim.

The district court further cites, *Perk v. Rector Resources Group*, 253 Va. 310 (1997), to support its finding that that JLLA and Comcast could not conspire together because they were one entity. Reliance on *Perk* is misplaced for several reasons. First, in *Perk*, a plaintiff alleged that a hospital and a debt collection attorney conspired together to improperly replace him as the debt collection attorney for the hospital. *Id*. at 312–313. The plaintiff there was angered that a new company had replaced him. *Id*. Admittedly, the hospital and the new law firm were acting exactly as the law would expect and allow. The purported conspiracy was nothing more than parties carrying on as hospital and debt collection attorney after terminating the relationship with the plaintiff. There was nothing alleged that the agent (the debt collection agency) used unlawful means to perform or otherwise acted outside the scope of its agency relationship with the hospital.

Here, Livia is not alleging that Comcast has lawfully replaced Livia with JLLA, but rather, that JLLA's use of unlicensed real estate personnel and the demand of unlawful commissions were unlawful means of performing its contractual obligations thereby taking JLLA outside of the scope of its agency relationship with Comcast making it a separate actor for purposes of the conspiracy.

27

The more apt analogy and appropriate analysis, but rejected by the district court, is found in *Grayson Fin. Am., Inc. v. Arch Specialty Ins. Co.*, 2:05cv461, 2006 U.S. Dist. LEXIS 7302 (E.D. Va. Feb. 6, 2006).   There, the plaintiff was a corporation that bundled and sold loans to loan purchasers.  *Id*. at *2.  The defendants were respectively Arch, a corporation that issued insurance policies, and Kessler, an agent for those insurance policies.  *Id*.  The plaintiff alleged both that Kesler was an agent of Arch, and that Kesler was a separate actor in the conspiracy and acted outside the scope of the agency relationship.  *Id*. at *9.  The District Court for the Eastern District of Virginia held that the plaintiff's complaint sufficiently alleged that Kesler was outside the scope of the agency relationship in furtherance of the conspiracy and denied the defendant's motion to dismiss.  *Id*. at *9–10.

Similarly in this case, Livia and both defendants are corporations. Livia also alleges that JLLA was an agent of Comcast, but also a separate actor in the conspiracy based on its demand of an unlawful commission and its illegal use of unlicensed real estate salespersons. (Complaint, ¶¶ 19, 20–27, J.A. 11–13). Indeed, further illustrating JLLA's actions as outside of the scope of its agency for Comcast, JLLA demanded that Livia actually enter a new contract – a brokerage agreement – with it. (Complaint, ¶¶ 19, 26, J.A. 11–12). Further, Livia alleges that "Comcast engaged JLLA for the purpose of locating and procuring properties for Comcast to lease" and also that "[n]otwithstanding the licensure requirements imposed by

28

Virginia law, Thompson initiated and participated in lease negotiations with Plaintiff [and] demanded commission payments from Plaintiff." (Complaint, ¶¶ 21, 26, J.A. 11–12). These allegations are squarely in line with the discussion in *Grayson*, and adequately set forth the facts establishing agency, and also that the agent was a separate actor for the purposes of the business conspiracy. Thus, for these reasons, and for the reasons discussed above, the district court was in error in finding an agent cannot conspire with its principal and that JLLA was not acting outside the scope of its agency relationship with Comcast to make it a separate actor for purposes of the conspiracy.

      C.  <u>The district court erred in finding no concerted action or unity of purpose between Comcast and JLLA.</u>

The district court incorrectly concluded that Livia's business conspiracy claim fails for lack of concert of action and unity of purpose between Comcast and JLAA. "[I]n analogizing to the context of criminal actions, a conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a "tacit understanding" to accomplish the object of the alleged conspiracy. *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 906 (E.D. Va. 2000). Livia's complaint alleges that Comcast and JLLA conspired together for their mutual benefit to force Livia to pay an illegal commission. (Complaint, ¶¶ 16–19, 21–24, 26–29, 31, 44 J.A. 10–12, 13, 15). As alleged, forcing Livia to pay the illegal commission would have caused Livia to realize significant unlawful monetary

29

losses.  (Complaint, ¶¶ 16, 19, J.A.10, 11)(Thompson demanded a commission of 3% over the life of the lease for its services provided to Comcast and also separately asked for 5% of the gross rent for its services offered to Livia).  As alleged by Livia, Thompson's unlicensed status, the attempt to force Livia to pay for services provided to Comcast, not Livia, and the actions of both JLLA and Comcast to retaliate against Livia for its refusal to pay those illegal commissions certainly constitute unlawful acts that if agreed to would have mutually benefitted Comcast and JLLA and would have harmed Livia.  (Complaint, ¶¶ 16, 19, 24–27, J.A. 10, 11, 12–13).

Moreover, in this case there is clearly a pattern, concert of action, and unity of purpose as evidenced by Comcast's own exhibit.  Thompson's email states that forcing the landlord to pay the commission is Comcast's "preferred way of doing business."  (Defense Ex., A, J.A. 46).  That statement, taken on its face, certainly implies that Comcast and Thompson have routinely demanded unlawful commissions from other landlords.

To require any higher pleading standard or proof of a concert of action at this stage of litigation, without the benefit of discovery, would require Livia to be privy to the internal communications between Comcast and its agent, which is an impossibility and is not in line with even the standard of review articulated by the district court that the facts should be viewed in the light most favorable to Livia and

30

the complaint should only be dismissed where it appears with certainty that Livia is entitled to no relief under any state of facts which could be proved.

D. <u>The district court erred in finding that Livia's claim fails for lack of sufficient legal malice.</u>

The district court in its opinion casts the facts of this case as a routine business transaction. However, JLLA and Comcast have engaged in conduct that is far from routine, is illegal, and is properly punishable under Virginia law.

Virginia law requires that "[a] plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., "intentionally, purposely, and without lawful justification." *Dunlap,* 247 Va. at 214. (citing *Commercial Bus. Sys., Inc. v. BellSouth Servs.*, 249 Va. 39, 47 (1995)). "[A] plaintiff [need not] prove that a conspirator's primary and overriding purpose is to injure another in his trade or business." *Simmons v. Miller*, 261 Va. 561, 578 (2001) (citations omitted).   When persons "conspire[], by threats, intimidation, or molestation to deter or influence him in the way he should employ his industry, his talents, or his capital, they [will] be guilty of a criminal offence." *Dunlap*, 287 Va. at 213 (citing *Reg. v Druitt*, 10 Cox C.C. 592 (1867)).

Comcast and JLLA clearly acted without lawful justification in using an unlicensed real estate broker to extort an unlawful commission from Livia and thereafter in combination with Comcast in retaliating against Livia. (Complaint, ¶¶ 14, 16, 17–20, 22–34. J.A. 10–13).  Plaintiff specifically alleges that:

31

"[u]pon information and belief, as a result of the Plaintiff's refusal to agree to payment of illegal compensation and commissions to JLLA, Thompson and Comcast undertook to identify and secure an alternative to Plaintiff's site for Comcast to lease. (Complaint, ¶ 28, J.A. 13). "Upon information and belief, after refusing the illegal demands for commissions, Thompson and JLLA persuaded Comcast not to exercise its option to renew the Lease Agreements with the Plaintiff. (Complaint, ¶ 31, J.A. 13) "With knowledge of illegal actions by JLLA and Thompson, Comcast acceded to the efforts of JLLA and Thompson and it declined to renew its Lease Agreements with Plaintiff." (Complaint, 32, J.A. 13). "Upon information and belief, Thompson and JLLA have induced Comcast to lease property and facilities elsewhere in the region and as a result of their actions, they have realized substantial commissions that they were not legally entitled to demand from Plaintiff."

(Complaint, ¶ 33, J.A. 13). Thus, the legal malice requirement is clearly met by factual allegations that Defendants' sought to retaliate against Livia by economic punishment and the district court erred in construing Livia's complaint in the narrowest terms, in violation of its own articulated standard of review, to find it failed to plead legal malice sufficient to support a claim for business conspiracy.

## CONCLUSION

For the reasons set forth above, Livia respectfully submits that the district court's Order of August 7, 2015 should be reversed and the case should be remanded for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Livia Properties II, LLC respectfully requests that pursuant to Rule 34(a) this Court hear oral argument in this case.

LIVIA PROPERTIES II, LLC
By Counsel


_____/s/ Mark D. Obenshain_____
MARK D. OBENSHAIN (VSB #27476)
JUSTIN M. WOLCOTT (VSB #83367)
OBENSHAIN LAW GROUP
420 Neff Avenue Suite 130
Harrisonburg, Virginia 22801
(540) 208-0727
(540) 266-3568 (fax)
mdo@obenshainlaw.com
jmw@obenshainlaw.com
*Counsel for Plaintiff - Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULES

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 7,981 words, excluding, the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman size 14 font.

/s/ Mark D. Obenshain_____
Attorney for Livia Properties, II LLC
Dated: 10/26/2015

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2015, the foregoing document was served on all parties or their counsel of record through the CM/ECF which will send a "Notice of Electronic Filing" to the following attorneys of record:

HAROLD JOHNSON, ESQUIRE
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, VA 23219
hjohnson@williamsmullen.com
*Counsel for defendant Comcast*

EDWARD H. STARR, JR, ESQUIRE
STEVEN PIEPGRASS, ESQUIRE
Troutman Sanders, LLP
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23218
edward.starr@troutmansanders.com
stephen.piepgrass@troutmansanders.com
*Counsel for defendant Jones Lang Lasalle Americas, Inc.*


/s/ Mark D. Obenshain
*Counsel for Plaintiff - Appellant*